**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

GERALD DIX,               )
                           )
         Plaintiff,        )
                           )      No. 17 CV 6561
       v.                )
                           )
                           )      Hon. Charles R. Norgle
EDELMAN FINANCIAL SERVICES, LLC et al., )
                           )
                           )
         Defendants.      )

## OPINION AND ORDER

Plaintiff Gerald Dix ("Plaintiff") brings this action against Defendants Edelman Financial Services, LLC ("Edelman Financial"), Theresa Miller ("Miller"), the Village of Lisle, Lisle Police Officer Rob Sommer ("Sommer"), Village of Lisle Police Officer Sean McKay ("McKay"), Village of Lisle Police Officer Dean Anders ("Anders"), Village of Lisle Police Officer John Doe #3 ("Doe #3"), MJ Suburban, Inc., d/b/a RE/MAX Suburban ("RE/MAX"), the City of Wheaton, City of Wheaton Police Officer Vetaliy Lord ("Lord"), Cheryl L Shurtz ("Shurtz"), Jane Doe #1 ("Doe #1"), Jane Doe #2 ("Doe #2"), and Fire Towing, Inc ("Fire Towing") (collectively, "Defendants"). Plaintiff's First Amended Complaint ("FAC") sets forth nineteen separate claims, including six federal causes of action under 42 U.S.C. § 1983 and various state law claims. In its February 28, 2018 Order, the Court dismissed Counts V, VI, VIII, X, XVII, and XVIII of Plaintiff's FAC *with prejudice*, to the extent that these Counts set forth claims against Edelman Financial, Doe #1, and Doe #2. Now, all remaining Defendants[1] have filed motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). For the following reasons, Defendants' motions to dismiss are granted.

---

[1] Fire Towing did not file a motion to dismiss; however, Fire Towing was never served in accordance with Fed. R. Civ. P. 4.

Plaintiff's § 1983 claims (Counts I, IV, XI, XIII, XIV, and XVI) are dismissed with prejudice and the Court relinquishes jurisdiction over Plaintiff's remaining state law claims.

## I. BACKGROUND

Plaintiff's FAC revolves around what he views as a "wrongful eviction" from Miller's home in Lisle, Illinois. Plaintiff and Miller were at some point engaged in a romantic relationship. As part of their relationship, Miller permitted Plaintiff to live in her home in Lisle. However, Plaintiff claims that their relationship turned strictly "platonic" in 2013 as the result of a "botched elective cosmetic surgical procedure" that left Miller in poor health. FAC ¶ 27. Plaintiff also claims that Miller was his landlord, but he provides no allegations regarding a written lease agreement or rent payments. Id. ¶ 21. Rather, he vaguely mentions that he shared living expenses with Miller and that he performed some household chores.

Plaintiff alleges Miller began asking him to make greater financial contributions after she lost her job as a pharmacist in May of 2017. According to Plaintiff, not only did Miller harass him for money, but she also repeatedly attempted to steal his paychecks and made several unauthorized purchases on his credit card. Plaintiff claims that Miller's actions were the result of advice she received from her financial advisor, Doe #1, an unknown agent of Edelman Financial. Doe #1 allegedly refused to release any of Miller's funds, and instead instructed her to "steal financial funds from the Plaintiff" and "convince the Plaintiff that he should obtain full-time employment" in order to replace her lost income. Id. ¶¶ 36, 45.

By way of background, Plaintiff states that at all time relevant most of his income was derived from his work as a software engineer. However, in addition, he brazenly admits that he has routinely engaged in the unauthorized practice of law.[2] Id. ¶¶ 119, 120 n. 4, 121. Specifically, he

---

[2] The Illinois Attorney Act provides that: "[n]o person shall be permitted to practice as an attorney or counselor at law within this State without having previously obtained a license for that purpose from the Supreme Court of this State."; and "[n]o person shall receive any compensation directly or indirectly for any legal services other than a regularly licensed attorney, nor may an unlicensed person advertise or hold himself or herself out to provide legal

states that he lost "billable hours" as the result of his "wrongful eviction" because he was unable to complete a rehearing petition *on behalf of his brother* that was to be filed by August 30, 2017, in the Illinois Appellate Court, Second District.[3] Id. ¶¶ 119-121 (emphasis added). According to Plaintiff, "because it is common for licensed attorneys to commit fraud on the courts, [he] has too often been called upon to commence and maintain legal action on behalf of himself and others against malefactors." Id. ¶ 120 n. 4.

In August of 2017, Miller decided to sell her home in Lisle and hired Shurtz, as an agent of RE/MAX, to facilitate the sale. Shurtz allegedly offered to sell Miller's home on the condition that Miller agreed to "evict" Plaintiff and have the house staged for listing within a week. Miller allegedly agreed to "evict" Plaintiff, but only after requiring him to do the bulk of the packing and moving necessary to stage Miller's home. Over the course of five pages in the FAC, Plaintiff describes in excruciating detail how Miller's home was allegedly in a state of disrepair and excessively cluttered. Plaintiff makes confusing references to various alleged building code violations and blames the cluttered state of the home on Miller's alleged "compulsive buying disorder." FAC ¶ 69.

Plaintiff claims that on August 22, 2017, he was somehow required to help stage Miller's home along with Miller's friend Paula and Doe #2, another unknown agent of Edelman Financial. Plaintiff alleges that he eventually became fed up with the "ineptness" of Paula and Doe #2 and refused to help any further with staging Miller's home. Before he left, however, Plaintiff claims that he told Miller and Doe #2 to leave his personal property undisturbed while they continued the staging process.

---

services." 705 ILCS 205/1. "In Illinois, the practice of law includes, at a minimum, representation provided in court proceedings along with any services rendered incident thereto, even if rendered out of court." U.S. v. Johnson, 327 F.3d 554, 561 (7th Cir. 2003) (citing People v. Peters, 10 Ill.2d 577 (1957)).

[3] Plaintiff has provided case number for his brother's lawsuit in which he admittedly engaged in the unauthorized practice of law—"15 L 495 in Kane County." Pl.'s Resp. to Def. Miller's Mot. to Dismiss at 5 n. 2.

Plaintiff alleges that he returned home from work on August 23, 2017, to find his personal property packed in boxes and comingled with Miller's property. Plaintiff claims that he had no intention of moving out of Miller's home—despite knowing that she was planning on selling her home—so he started to unpack his property. According to Plaintiff, Miller grabbed his arm to stop him from unpacking and a heated dispute between Plaintiff and Miller followed. During the dispute, Plaintiff informed Miller that "he wasn't going to help her stage the Lisle home because she and her helpers disturbed [his] possessions in defiance of [his] specific instructions." FAC ¶ 103. Miller allegedly responded by informing Plaintiff of her secret agreement with Shurtz "to have Plaintiff help stage the Lisle home and then evict Plaintiff the upcoming Sunday night, August 27, 2017." Id. ¶ 104.

Plaintiff alleges that following the dispute, Miller called the Lisle police to "evict" Plaintiff because he refused to help stage her home. Shortly thereafter, four or five unknown Lisle police officers arrived at Miller's home in response to her call. The situation was seemingly resolved, as the officers eventually left and Plaintiff reentered Miller's home.

Plaintiff alleges that on August 24, 2017, he attempted to move several more boxes of personal property into Miller's home, which precipitated another dispute with Miller. Miller again called the Lisle Police and three officers responded to her call: Sargent Dempsy, Officer Sommer, and Officer McKay. Plaintiff claims that upon their arrival, Sommer and McKay spoke with Miller and decided to "evict" Plaintiff.

Sommer and McKay allegedly informed Plaintiff that he was not permitted to enter Miller's home and instructed Miller and Doe #2 to remove Plaintiff's personal property from the home and place it on the driveway. Plaintiff alleges that Sommer prevented him from reentering Miller's home while Miller and Doe #2 began moving his personal property to the driveway. Plaintiff claims he became upset with the manner in which Miller and Doe #2 were moving his possessions and he expressed his frustration by calling Doe #2 "stupid." FAC ¶ 128. Sommer allegedly instructed

Plaintiff that "he could not call Doe #2 stupid," and that "if he called anyone else stupid, a dingbat, ding-a-ling, idiot or 'stupid bitch' that [he] would arrest Plaintiff for disorderly conduct." Id. ¶ 129-130.

While Sommer and McKay were still at Miller's home, Plaintiff left to rent a moving truck to carry away his personal property. Plaintiff claims that Sommer and McKay agreed to protect Plaintiff's personal property while he rented the moving truck. Plaintiff alleges that despite their promise to "guard" his belongings, some of the boxes containing his personal property were missing when he returned with the moving truck. Plaintiff further alleges that he was eventually allowed to reenter Miller's home to gather his personal property, but Sommer and McKay prevented him from entering the dining room, second floor, and third floor, where he believed some of his property had been moved by Miller and Doe #2. Plaintiff also claims that Sommer forced him to turn over his keys to Miller's home under protest and that Sommer and McKay informed him that he would be arrested if he returned to Miller's home for any reason besides retrieving his personal property or his vehicle, which Plaintiff left parked in Miller's driveway.

Subsequent to what Plaintiff calls his "wrongful eviction," he demanded that Miller and the Village of Lisle ship him his personal property that he claims was left behind at Miller's home. Plaintiff contends that Miller and the Village of Lisle refused to ship him his property and that he was prevented from retrieving his vehicle that he left parked in Miller's driveway. However, Plaintiff fails to plead how he was prevented or who was responsible for stopping him from removing his vehicle from Miller's driveway—e.g. he does not indicate that his keys to his vehicle were taken from him, or that he attempted to retrieve his vehicle, but was stopped by a Lisle police officer. Rather, Plaintiff admits earlier in his FAC that Sommer and McKay informed him that he *could* return to Miller's home to collect his personal property and his vehicle. It is not disputed that Plaintiff never removed his vehicle from Miller's driveway.

On September 6, 2017, nearly two weeks after Plaintiff left Miller's home, he allegedly spoke with Miller and informed her of his intent file the instant lawsuit. Miller allegedly responded by stating "I am going to kill you if you file that complaint." FAC ¶ 162. Plaintiff claims that this comment caused him to fear for his safety, but that the Lisle Police refused to assist him in retrieving his personal property and his vehicle. Plaintiff further claims that the Village of Lisle initially agreed to protect his property that remained at Miller's home. However, after he filed the original complaint in this case, Miller and the Village of Lisle allegedly retaliated against him by "donating" his vehicle to Fire Towing. Plaintiff fails to address that he allowed his vehicle to remain on Miller's property for at least several weeks before it was removed by Fire Towing.

Plaintiff's FAC continues with further allegations pertaining to events that occurred after he filed his complaint. Plaintiff claims that on or about August 25, 2017, he received a phone call from Officer Lord of the Wheaton Police Department, wherein Lord falsely accused him of threatening Shurtz for her involvement in Plaintiff's alleged "wrongful eviction." Plaintiff further claims that Lord threatened to provide false testimony to a DuPage County Court for the purpose of obtaining a warrant for Plaintiff's arrest and that Lord and Shurtz conspired to manufacture evidence against him in retaliation for Plaintiff filing the instant lawsuit against the various parties. However, Plaintiff does not allege that he was ever arrested or prosecuted in connection with any false testimony or evidence manufactured by Lord and Shurtz.

Plaintiff alleges another conspiracy against him, this time involving Miller and Doe #3, an unidentified Lisle Police Officer. Plaintiff claims that Doe #3 informed Miller that the Village of Lisle was planning on initiating legal action against her for her role in instigating Plaintiff's "wrongful eviction," but that the Village of Lisle would not pursue any legal action if she filed a criminal complaint against Plaintiff. Plaintiff further contends that Doe #3 successfully coerced Miller into filing a criminal complaint against him that contained false testimony—although, he again does not allege that he was ever arrested or prosecuted in connection with Miller's criminal

6

complaint. Plaintiff also claims that Miller informed him that she would not pursue the criminal complaint against him—which she had allegedly already filed—if he voluntarily dismissed the instant lawsuit and gave her *all of his money*. He did not give Miller all of his money.

Plaintiff alleges yet a third conspiracy against him after he filed his complaint. This conspiracy allegedly involved Officer Anders of the Lisle Police Department and Miller. Plaintiff claims he received a phone call from Anders on September 28, 2017, during which Anders informed him that Miller had recently contacted the Lisle Police Department to report that Plaintiff had reentered her home without her permission for the purpose of delivering a motion in this case. Plaintiff claims that he told Anders he did not enter Miller's home, but Anders allegedly did not believe him and threatened that Ander's would: provide false testimony in a DuPage County Court that Plaintiff had entered Miller's home; obtain an arrest warrant for Plaintiff; and convince the State's Attorney's Office to prosecute Plaintiff for criminal home invasion. Thus, like his allegations against Lord, Plaintiff imputes to Anders the commission of perjury. Plaintiff further claims that Anders' alleged threats of arrest and prosecution were made for the purpose of intimidating Plaintiff into dismissing the instant lawsuit, and for the purpose of aiding and abetting Miller's extortion of money from Plaintiff. However, identical to his other conspiracy claims, he does not allege that he was ever arrested, let alone prosecuted, based on any false testimony or evidence manufactured by Anders and Miller.

## II. DISCUSSION

### A. Standard of Review

A motion under Rule 12(b)(6) tests the sufficiency of the complaint under the plausibility standard, <u>Bell Atlantic Corporation v. Twombly</u>, 550 U.S. 544, 570 (2007), not the merits of the suit. <u>Gibson v. City of Chicago</u>, 910 F.2d 1510, 1520 (7th Cir. 1990) (citation omitted). "[A] plaintiff's claim need not be probable, only plausible: 'a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and

unlikely.'" Indep. Trust Corp. v. Stewart Info. Servs. Corp., 665 F.3d 930, 935 (7th Cir. 2012) (quoting Twombly, 550 U.S. at 556). "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.' To rise above the 'speculative level' of plausibility, the complaint must make more than '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements.'" Oakland Police & Fire Ret. Sys. v. Mayer Brown, LLP, 861 F.3d 644, 649 (7th Cir. 2017) (citing Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). In deciding a Rule 12(b)(6) motion, the Court accepts as true all well-pleaded facts in a plaintiff's complaint, and draws all reasonable inferences in his favor. Burke v. 401 N. Wabash Venture, LLC, 714 F.3d 501, 504 (7th Cir. 2013) (citations omitted). "[A] a plaintiff is not required to plead facts in the complaint to anticipate and defeat affirmative defenses. But when a plaintiff's complaint nonetheless sets out all of the elements of an affirmative defense, dismissal under Rule 12(b)(6) is appropriate." Indep. Trust Corp., 665 F.3d at 935.

## B. Count I is Dismissed with Prejudice Because Plaintiff's Allegations Show That Anders and McKay did Not Violate His Constitutional Rights

Count I sets forth a § 1983 claim against Sommer, McKay, Miller, and Shurtz, alleging that these defendants conspired to violate Plaintiff's constitutional rights by unlawfully evicting Plaintiff, causing him to remove his property from Miller's home, and stealing and destroying his property. Plaintiff further alleges that defendants violated his rights under the Fourth Amendment to be secure in his person, papers, and effects against unreasonable seizures; violated his rights under the Fourteenth Amendment to substantive due process; and violated his rights under the Fourteenth Amendment to procedural due process.

Sommer, McKay, Miller, and Shurtz argue that Count I must be dismissed because Sommer and McKay are entitled to qualified immunity pursuant to White v. City of Markham, 310 F.3d 989, 995 (7th Cir. 2002). While the Court does not reject this argument, there is no need to fully consider

the doctrine of qualified immunity because Plaintiff's allegations show that he suffered no constitutional violation.

"In order to state a claim under § 1983, a plaintiff must sufficiently allege that (1) a person acting under color of state law (2) deprived him of a right, privilege, or immunity secured by the Constitution or laws of the United States." London v. RBS Citizens, N.A., 600 F.3d 742, 745–46 (7th Cir. 2010). "Any Fourth Amendment inquiry necessarily begins with a determination of whether a search or seizure actually occurred." Carlson v. Bukovic, 621 F.3d 610, 618 (7th Cir. 2010) (citing Scott v. Harris, 550 U.S. 372, 381 (2007). With respect to whether there has been a seizure of a person, the traditional approach is for the Court to determine whether the person believed he was "free to leave." Id. A seizure of property occurs when "there is some meaningful interference with an individual's possessory interests in that property." United States v. Jacobsen, 466 U.S. 109, 113 (1984). The Court's determination of whether a seizure has occurred "is made on the basis of the 'totality of the circumstances' surrounding the encounter." Carlson, 621 F.3d at 618 (quoting United States v. Jerez, 108 F.3d 684, 690 (7th Cir.1997)); Florida v. Bostick, 501 U.S. 429, 437 (1991).

Here, Plaintiff's allegations reveal that: he was free to leave Miller's property at any time; he did in fact leave to rent a moving truck to transport his personal property; Sommer and McKay directed Miller and Doe #2 to turn over Plaintiff's personal property; he was permitted to reenter Miller's home to gather his personal property; and Sommer and McKay informed him that he could return to Miller's home to gather any property that was left behind. Accepting Plaintiff's allegations as true, the Court concludes that there was no seizure of Plaintiff or his property from Miller's home within the meaning of the Fourth Amendment. Rather, Plaintiff was instructed to *leave* Miller's home, and ended up leaving voluntarily with his personal property in a moving truck that he rented. Moreover, in considering the totality of the circumstances as alleged, Sommer and McKay actually *helped* Plaintiff retrieve his personal property from Miller's home.

Having concluded that no seizure occurred, Plaintiff's claim that his Fourth Amendment rights were violated hangs completely on his assertion that he was "wrongfully evicted," in violation of the Illinois Forcible Entry and Detainer Act, 735 Ill. Comp. Stat. 5/9-101, *et seq.* However, without determining the applicability of that state statute, it is well settled that the "mere violation of a state statute does not infringe the federal Constitution." Snowden v. Hughes, 321 U.S. 1, 11 (1944); Lennon v. City of Carmel, Indiana, 865 F.3d 503, 509 (7th Cir. 2017); Lennon v. City of Carmel, Indiana, 865 F.3d 503, 509 (7th Cir. 2017). Moreover, the Seventh Circuit has expressly held that an officer's failure to comply with the Illinois Forcible Entry and Detainer Act "does not matter" for the purposes of a claim under the Fourth Amendment. Gordon v. Degelmann, 29 F.3d 295, 301 (7th Cir. 1994). Accordingly, Plaintiff has pled himself out by alleging facts showing that his rights under the Fourth Amendment were not violated. See Tamayo v. Blagojevich, 526 F.3d 1074, 1086 (7th Cir. 2008) ("A plaintiff pleads himself out of court when it would be necessary to contradict the complaint in order to prevail on the merits." (internal quotation marks omitted)).

Plaintiff's substantive due process claim fails for similar reasons. The Due Process Clause of the Fourteenth Amendment provides: "[N]or shall any State deprive any person of life, liberty, or property, without due process of law." In Coniston Corp. v. Vill. of Hoffman Estates, the court considered how a state government's deprivation of property could amount to a violation of substantive due process. 844 F.2d 461 (7th Cir. 1988). The court explained that there may be a violation of substantive due process when a state government deprives an owner of his property for a private purpose. Id. at 467.

Here, Plaintiff pleads himself out again by alleging that: Sommer and McKay directed Miller and Doe #2 to move his personal property outside; he carried away his personal property in a moving truck; and he could return to gather any property that was left behind. Based on these allegations, Plaintiff cannot show that Sommer and McKay deprived him of his property for a private purpose—which would be *taking* his property and *giving* it to Miller and Doe #2. Rather, as noted above,

10

Plaintiff's allegations show that Sommer and McKay actually *helped* him in retaining his personal property. Moreover, Plaintiff does not dispute that Miller wanted his personal property *removed* from her home. Plaintiff is also foreclosed from attempting to turn his "wrongful eviction" claim into a substantive due process violation. Coniston, 844 F.2d at 467 ("A violation of state law is not a denial of due process of law.").

Next, the Court addresses Plaintiff's claim that he has suffered a violation of his right to procedural due process. The Seventh Circuit's decision in Soldal v. Cty. of Cook is instructive on this point. 942 F.2d 1073 (7th Cir. 1991), rev'd sub nom. Soldal v. Cook Cty., Ill., 506 U.S. 56, 113 S. Ct. 538, 121 L. Ed. 2d 450 (1992). In Soldal, the plaintiffs claimed that the owner of a mobile home park and its manager conspired with Illinois deputy sheriffs to seize and remove the plaintiffs' mobile home in violation of their Fourth and Fourteenth Amendment rights. Id. The court held that "*no* interest protected by the Fourth Amendment [was] involved" in the removal of the plaintiffs' mobile home because there had been no invasion of the plaintiff's privacy. Id. at 1077-80 (emphasis in original). Further, the court stated that a plaintiff claiming a deprivation of procedural due process in connection with an eviction faces "a distinctly uphill fight" because "the Supreme Court has held that the denial of procedural rights (here the rights that Illinois law grants tenants in eviction proceedings) as a result of the random and unauthorized acts of subordinate public officers (the deputy sheriffs in this case) is not actionable under section 1983 unless the plaintiff lacks adequate judicial remedies under state law." Id. at 1075–76 (citing Parratt v. Taylor, 451 U.S. 527 (1981); Zinermon v. Burch, 494 U.S. 113 (1990); Easter House v. Felder, 910 F.2d 1387, 1396–97 (7th Cir.1990) (en banc)). The court further stated that "Illinois law entitled the [plaintiffs] to sue [the owner and manager of the mobile home park] for the damages caused by the illegal eviction," and therefore the plaintiffs "had an adequate remedy" under state law. Id. at 1076.

The Supreme Court reversed the Seventh Circuit's decision in Soldal, holding that "[t]he seizure and removal of the Soldals' trailer home implicated petitioners' Fourth Amendment rights."

11

_Soldal v. Cook Cty., Ill._, 506 U.S. 56 (1992).[4] However, the Court declined to address whether the removal of the Soldals' trailer home was a deprivation of their procedural or substantive due process rights. _Id._ at 60 n. 5.

Here, Plaintiff makes the conclusory allegation that defendants violated his rights under the Fourteenth Amendment to the United States Constitution to procedural due process. Because Plaintiff's FAC fails to specify what procedure he was allegedly deprived of, the Court presumes he is referring to his alleged "wrongful eviction" in violation of Illinois law. Plaintiff, however, has an adequate remedy for his alleged "wrongful eviction" from Miller's home—the Illinois Forcible Entry and Detainer Act. _See_ 735 ILCS 5/9-102. In fact, Count II of Plaintiff's FAC sets forth a claim under this state statute against Miller and other defendants. Therefore, Plaintiff is unable to state a claim for violation of his procedural due process rights based on his alleged "wrongful eviction." _Felder_, 910 F.2d at 1396 ("[D]eprivations of property resulting from random and unauthorized acts of state actors do not constitute a violation of the procedural requirements of the fourteenth amendment due process clause if a meaningful post-deprivation remedy for the loss is available." (internal quotation marks omitted)). Accordingly, Count I is dismissed with prejudice.

### C. Count IV is Dismissed with Prejudice Because Plaintiff's Allegations Show that Sommer Did Not Violate His First Amendment Right to Free Speech

Count IV sets forth a § 1983 claim against Sommer and the Village of Lisle, alleging that Sommer prevented Plaintiff from exercising his First Amendment right to free speech. Plaintiff claims that during the course of his alleged "wrongful eviction" from Miller's home, Sommer threatened to arrest Plaintiff for disorderly conduct "if he called anyone else stupid, a dingbat, ding-a-ling, idiot or 'stupid bitch'" FAC ¶ 130. Sommer argues that Count I should be dismissed because he

---

[4] The Court rejects any attempt by Plaintiff to apply the Supreme Court's holding in _Soldal_, 506 U.S. 56 to the facts alleged in his FAC. In Soldal, the Supreme Court held that a police officer violates the Fourth Amendment when a private party seizes a person's possessions and the officer enables that seizure despite knowing that it violates the law. _Id._ at 60 n. 6, 71-72. As explained above, the totality of the circumstances as alleged show that Sommer and McKay _helped_ Plaintiff gather his personal property from Miller's home.

is entitled to qualified immunity. Similar to the Court's analysis above, the Court does not reject Sommer's argument, but concludes that there is no need to fully consider qualified immunity because Plaintiff's allegations show that he suffered no violation of his First Amendment right to free speech.

Central to Plaintiff's claim is that he had a right under the First Amendment to stand on Miller's property and direct a continuous barrage of abusive epithets at Miller and Doe #2, after he was instructed to leave. Moreover, Plaintiff's claim asserts that he had a right to direct profane insults at the two women in close proximity during an ongoing domestic dispute at Miller's home, wherein Sommer and McKay were summoned by Miller to prevent a breach of the peace. The Supreme Court has "repeatedly held that individuals are not required to welcome unwanted speech into their own homes and that the government may protect this freedom." Frisby v. Schultz, 487 U.S. 474, 485 (1988); see also Fla. B. v. Went For It, Inc., 515 U.S. 618, 625 (1995) ("[T]he State's interest in protecting the well-being, tranquility, and privacy of the home is certainly of the highest order in a free and civilized society." (internal quotation marks omitted)). Thus, Sommer's warning to Plaintiff that he would be arrested should he continue his course of conduct did not violate Plaintiff's First Amendment right to free speech, because Plaintiff had no right to hurl abusive insults at Miller and Doe #2 during an ongoing domestic dispute at Miller's home. See Cohen v. California, 403 U.S. 15, 21 (1971) ("[The] government may properly act in many situations to prohibit intrusion into the privacy of the home of unwelcome views and ideas which cannot be totally banned from the public dialogue."); see also Rowan v. U.S. Post Off. Dept., 397 U.S. 728, 737 (1970) ("The ancient concept that 'a man's home is his castle' into which 'not even the king may enter' has lost none of its vitality, and none of the recognized exceptions includes any right to communicate offensively with another."); see also Chaplinsky v. State of New Hampshire, 315 U.S. 568, 572 (1942) ("Resort to epithets or personal abuse is not in any proper sense communication of information or opinion safeguarded by the Constitution, and its punishment as a criminal act would raise no question under

13

that instrument." (internal quotation marks omitted)). Accordingly, Count IV is dismissed with prejudice.

### D. Count XI is Dismissed with Prejudice Because Plaintiff's Allegations Show that He Was Not Injured by False Testimony or Evidence Allegedly Fabricated by Lord and Shurtz

Count XI sets forth a § 1983 claim against the City of Wheaton, Lord, and Shurtz. Plaintiff claims that Lord and Shurtz conspired to violate his constitutional rights by manufacturing false claims and false evidence against him. Lord and the City of Wheaton argue that Count XI should be dismissed because Plaintiff fails to allege any violation of his constitutional rights.

"In order to state a claim under § 1983, a plaintiff must sufficiently allege that (1) a person acting under color of state law (2) deprived him of a right, privilege, or immunity secured by the Constitution or laws of the United States." London, 600 F.3d at 745–46. In the context of § 1983 claims involving fabrication of evidence by a police officer, a plaintiff must allege that he was *injured* by the officer's act of fabricating false evidence against him. Whitlock v. Brueggemann, 682 F.3d 567, 582 (7th Cir. 2012). In other words, "if an officer…fabricates evidence and puts that fabricated evidence in a drawer, making no further use of it, then the officer has not violated due process." Id.

Here, Plaintiff alleges that Lord called him and falsely accused him of threatening Shurtz. Plaintiff also contends that Lord threatened to provide false testimony to a DuPage County Court for the purpose of obtaining a warrant for Plaintiff's arrest, and that Lord and Shurtz conspired to manufacture evidence against him. However, despite these bald-faced allegations, Plaintiff does not allege that he was ever arrested or prosecuted in connection with any false testimony or evidence allegedly fabricated by Lord or Shurtz. In fact, Plaintiff fails to allege that Lord took any further action other than making the false accusations and threats against him during the phone call. Thus, Plaintiff's allegations show that he incurred no actual injury as the result of false testimony or evidence allegedly fabricated by Lord or Shurtz. Moreover, the false accusations and threats that

Lord allegedly made to Plaintiff cannot alone establish a constitutional violation. Patton v. Przybylski, 822 F.2d 697, 700 (7th Cir. 1987) (citing Paul v. Davis, 424 U.S. 693, 711-12 (1976) (stating that derogatory and defamatory remarks made by a police officer do not amount to a violation of due process). Accordingly, Count XI is dismissed with prejudice.

**E. Count XIII is Dismissed with Prejudice Because Plaintiff Fails to State a Cognizable Claim and His Allegations Show that He Was Not Injured by any False Evidence or a False Criminal Complaint Allegedly Fabricated by Doe #3 and Miller**

Count XIII sets forth a § 1983 "abuse of process" claim against the Village of Lisle, Doe #3, and Miller. Plaintiff claims that Doe #3 (an unidentified Lisle police officer) and Miller conspired to violate Plaintiff's constitutional rights by manufacturing false evidence and filing a false criminal complaint against him for the purpose of extorting money from Plaintiff and coercing him into voluntarily dismissing the instant lawsuit. The Village of Lisle argues that Count XIII must be dismissed with prejudice as to all named defendants because there is no cognizable § 1983 claim for "abuse of process" available to Plaintiff. The Court agrees.

The Seventh Circuit has held that "abuse of process is not a free-standing constitutional tort if state law provides a remedy for abuse of process." Adams v. Rotkvich, 325 F. App'x. 450, 453 (7th Cir. 2009). Illinois law provides a remedy for abuse of process claims. Podolsky v. Alma Energy Corp., 143 F.3d 364, 372 (7th Cir. 1998). Therefore, Plaintiff's abuse of process claim is not cognizable under § 1983. Moreover, identical to the Court's analysis above, Plaintiff fails to allege that he suffered an injury in connection with the false evidence and criminal complaint purportedly fabricated by Miller and Doe #3. Whitlock, 682 F.3d at 582. Accordingly, Count XIII is dismissed with prejudice.

**F. Count XIV is Dismissed with Prejudice Because Plaintiff's Allegations Show that He Was Not Injured by False Evidence Allegedly Fabricated by Anders and Miller**

Count XIV sets forth a claim entitled "Delusion of Home Invasion" under § 1983 against the Village of Lisle, Anders, and Miller. Plaintiff claims that Anders and Miller conspired to violate his

rights under the First, Fourth, and Fourteenth Amendments by manufacturing false claims and evidence to support a criminal complaint against him for home invasion. Anders argues that Count XIV should be dismissed with prejudice because Plaintiff fails to allege he suffered any injury resulting from Ander's alleged fabrication of evidence and threats of arrest and prosecution. The Court agrees.

Count XIV merits little attention because it is substantively the same claim as Count XI. Plaintiff alleges that Anders conspired with Miller to manufacture false testimony and evidence against him but fails to allege that he suffered any injury—e.g. that he was arrested as the result of the false testimony or evidence. Whitlock, 682 F.3d at 582 (7th Cir. 2012). Further, Anders' alleged threats and false accusations are insufficient to support Plaintiff's claim. Patton, 822 F.2d at 700. Accordingly, Count XIV is dismissed with prejudice.

### G. Count XVI is Dismissed with Prejudice Because Plaintiff's Allegations are Conclusory and He is Unable to Establish Any Constitutional Violation

Count XVI sets forth a § 1983 Monell claim against the Village of Lisle. Plaintiff alleges that the actions of Sommer, McKay, Anders, Doe #3, and other unknown Lisle police officers were performed under the authority of one or more *de facto* policies of the Village of Lisle, its police department, and the Lisle Chief of Police. Plaintiff claims the *de facto* policies included: (1) the failure to hire, train, supervise, discipline, transfer, monitor, counsel and/or otherwise control police officers who commit unlawful acts including wrongful evictions, extortion, and the manufacture of false evidence and claims; (2) the police code of silence; and (3) the encouragement of wrongful convictions, extortion, and manufacture of false evidence and claims. The Village of Lisle argues that Count XVI should be dismissed because Plaintiff's allegations amount to only a "formulaic recitation of the elements of a" Monell claim. Iqbal, 556 U.S. at 678. The Court agrees.

"In a § 1983 case, a city or other local governmental entity cannot be subject to liability unless the harm was caused in the implementation of 'official municipal policy.'" Lozman v. City of

Riviera Beach, Fla., 138 S. Ct. 1945, 1947 (2018) (quoting Monell v. New York City Dept. of Social Servs., 436 U.S. 658, 691 (1978)). "A municipal body may be liable for constitutional violations 'pursuant to a governmental custom even though such a custom has not received formal approval through the body's official decisionmaking channels.'" Gill v. City of Milwaukee, 850 F.3d 335, 344 (7th Cir. 2017) (quoting Monell, 436 U.S. at 690–91)). However, "[t]o succeed on this *de facto* custom theory, the plaintiff must demonstrate that the practice is widespread and that the specific violations complained of were not isolated incidents." Id. "At the pleading stage, then, a plaintiff pursuing this theory must allege facts that permit the reasonable inference that the practice is so widespread so as to constitute a governmental custom." Id.

Here, Plaintiff seeks to attribute the alleged actions of Sommer, McKay, Anders, and Doe #3 to various *de facto* policies of the Lisle police department. However, Plaintiff fails to plausibly allege that the defendants' actions were anything more than isolated incidents, which are insufficient to support his claim based on the theory of a *de facto* policy. See Id. (citing McCauley v. City of Chicago, 671 F.3d 611, 618 (7th Cir. 2011)) ("The specific actions of the detectives in [plaintiff's] case alone, without more, cannot sustain a Monell claim based on the theory of a *de facto* policy."). In short, Count XVI amounts to nothing more than "[b]oilerplate allegations of a municipal policy," and therefore lacks the necessary factual support. Sivard v. Pulaski County, 17 F.3d 185, 188 (7th Cir. 1994). Moreover, as explained above, the Court has concluded that Plaintiff's allegations show that his constitutional rights were *not* violated by the actions of Sommer, McKay, Anders, and Doe #3. Therefore, Plaintiff is unable to prevail on his Monell claim against the Village of Lisle. Accordingly, Count XVI is dismissed with prejudice.

### III. CONCLUSION

For the aforementioned reasons, Defendant's motions to dismiss are granted. Counts I, IV, XI, XIII, XIV, and XVI of Plaintiff's FAC are dismissed with prejudice. Having resolved all federal causes of action, the Court relinquishes jurisdiction over Plaintiff's remaining state law claims

pursuant to 28 U.S.C. § 1367(c)(3). See City of Chicago v. Int'l College of Surgeons, 522 U.S. 156, 172-74 (1997); see also Groce v. Eli Lilly & Co., 193 F.3d 496, 500-01 (7th Cir. 1999). Civil case terminated.

IT IS SO ORDERED.

ENTER:

CHARLES RONALD NORGLE, Judge
United States District Court

DATE: August 14, 2018